No. 05-087

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 154N

DANIEL ARREDONDO,

        Plaintiff and Appellant,

  v.

CITY OF BILLINGS DEPARTMENT OF POLICE
and BILLINGS POLICE COMMISSION,

        Defendant and Respondent.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
                       In and For the County of Yellowstone, Cause No. DV 2000-0052,
                       Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

        For Respondent:

        Bonnie J. Sutherland, City Attorney's Office, Billings, Montana

Submitted on Briefs:  January 31, 2006

Decided:  July 11, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The City of Billings Police Department (the City) terminated Daniel Arredondo (Arredondo) from his employment as a Billings Police Officer on October 3, 1995, after an internal affairs investigation confirmed numerous incidents of on-duty sexual misconduct. Arredondo appealed his termination to the City of Billings Police Commission (the Commission). On January 3, 2000, the Commission upheld Arredondo's termination. Arredondo subsequently appealed the Commission's Order to the Thirteenth Judicial District Court. On December 16, 2004, the District Court affirmed the Commission's ruling. Arredondo appeals the District Court's Order. We affirm.

## ISSUES

¶3 A restatement of the issues on appeal is:

¶4 Did the District Court err in concluding that Arredondo's "special prosecutor" claim was barred?

¶5 Did the District Court err in finding against Arredondo on the issues of procedural due process and delay?

2

¶6 Did the District Court err in finding that the City did not deny Arredondo's administrative due process rights as a result of the City's alleged failure to follow disciplinary procedures?

¶7 Did the District Court err when it approved the burden of proof standard utilized by the Commission?

¶8 Did the District Court err when it found that Arredondo was not denied the right to effective cross-examination?

¶9 Did the District Court err when it upheld the Commission's exclusion of impeachment evidence on discriminatory or retaliatory termination and extrinsic evidence of bias?

## FACTUAL AND PROCEDURAL BACKGROUND

¶10 Prior to Arredondo's termination from the Billings Police Department, he was simultaneously involved in an administrative employment termination proceeding and an "official misconduct" criminal proceeding. While the majority of the issues presented on appeal are issues arising from the administrative employment termination proceeding, facts pertinent to both proceedings are presented as necessary for a better understanding of the issues.

¶11 In early 1995, Arredondo received two notices that he was being investigated for official misconduct by the Billings Police Department, Internal Affairs division. On February 19, 1995, he was suspended with pay pending completion of the investigation. Following the internal investigation, Arredondo's counsel received notice on September 21, 1995, that a due process hearing would be held on September 27, and that Arredondo would

3

be given the opportunity to respond to the allegations contained in the investigation. The 14-page notification letter detailed the complaints of nine women, eight of whom alleged that Arredondo behaved in a sexually inappropriate manner toward them while acting in his official capacity. Neither Arredondo nor his counsel appeared at the hearing. On October 3, 1995, Arredondo's counsel demanded a second due process hearing claiming that he mistakenly thought the hearing had been continued to a later date based on the Police Chief's request. Arredondo's demand was effectively denied when the City issued its post-hearing ruling, also on October 3, notifying Arredondo in writing that his employment was terminated.

¶12 Meanwhile, in August 1995, the City hired a special prosecutor to represent the City in its criminal case against Arredondo, and on August 14, the special prosecutor filed an Information charging Arredondo with three counts of misdemeanor official misconduct. On September 19, 1995, Arredondo's counsel notified him that his criminal trial was set for January 22, 1996.

¶13 After receiving the October 3 termination notification, Arredondo appealed his disciplinary termination to the Billings Police Commission. The City responded to the appeal notice with a Motion requesting that Arredondo's termination appeal be continued until after his criminal charges were resolved. Arredondo did not respond or object to the City's Motion; therefore, in December 1995, the Commission granted the Motion and postponed Arredondo's post-termination hearing until after Arredondo's criminal trial.

¶14 Arredondo's criminal trial ultimately began on February 3 and concluded on February 7, 1998. This two-year delay was caused in large part by Arredondo's seven requests for continuances, each accompanied by a signed waiver of his right to a speedy trial. Arredondo was acquitted of two counts of official misconduct. The jury hung on the third count. In October 1998, the State dismissed the case against Arredondo, choosing not to pursue retrial on the unresolved count of official misconduct.

¶15 In February 1999, the City moved the Commission to set a hearing on Arredondo's termination proceeding. Three days before the termination hearing was scheduled to begin, Arredondo requested a continuance. The Commission denied the request and opened the hearing on November 13, 1999. The hearing lasted four days, during which the City presented 26 witnesses and 69 exhibits. Arredondo presented two witnesses, introduced 13 exhibits and did not testify. On December 30, 1999, the Commission unanimously determined that the City had presented significant and substantial evidence supporting seven of the ten charges, and that the City was therefore justified in terminating Arredondo's employment.

¶16 Arredondo appealed the Commission's ruling by filing a Complaint in District Court on January 14, 2000, seeking review and reversal of the Commission's Findings of Fact, Conclusions of Law and Order, and immediate reinstatement with back pay and benefits. He raised the issues noted above. See ¶¶ 3-9.

¶17 On December 16, 2004, the District Court affirmed the findings and conclusions of the Commission and affirmed the City's termination of Arredondo. The District Court issued a

5

second Order on December 16, holding that Arredondo failed to preserve the "special prosecutor" issue for appellate review before the District Court because he failed to raise it before the Commission.  Arredondo appeals the District Court's ruling.

## STANDARD OF REVIEW

¶18    A final decision of the police commission may be appealed to the district court which has jurisdiction to review all questions of fact and law. The function of the district court is to review the law to determine whether the rulings of the commission are correct and to review the facts to determine whether they are supported by substantial evidence.  *Abbey v. City of Billings Police Com'n* (1994), 268 Mont. 354, 886 P.2d 922.  The district court shall defer to the Commission unless findings of fact are clearly erroneous.  *Wolny v. City of Bozeman*, 2001 MT 166, ¶ 14, 306 Mont. 137, ¶ 14, 30 P.3d 1085, ¶ 14.

¶19    When we review the district court's opinion, we apply the standard of review set forth in § 2-4-704, MCA.  We may not substitute our judgment for that of the agency as to the weight of the evidence which supports findings of fact.  *Wolny*, ¶ 15.

## DISCUSSION

¶20    *Did the District Court err in concluding that Arredondo's "special prosecutor" claim was barred?*

¶21    Arredondo presented a lengthy argument to the District Court reciting the various statutory errors allegedly committed by the City in appointing a special prosecutor to bring the City's criminal case against Arredondo.  The District Court concluded that Arredondo's claim was barred because Arredondo failed to raise the issue before the Police Commission; therefore he did not preserve the issue for appellate review.  The court correctly observed that

6

a party "cannot raise on judicial review something that it did not raise before the agency itself." *Lincoln County v. Sanders County* (1993), 261 Mont. 344, 351, 862 P.2d 1133, 1138. Arredondo made a similar lengthy argument to this Court but did not address the District Court's primary reason for refusing to address this issue. The District Court correctly determined that Arredondo's "special prosecutor" issue was not preserved for appeal.

¶22 *Did the District Court err in finding against Arredondo on the issues of procedural due process and delay?*

¶23 Arredondo argued to the District Court that his constitutional right to due process was violated because he was not provided a due process hearing before he was terminated. Arredondo maintained that the City should have agreed to a second due process hearing because he and his attorney mistakenly believed the September 27, 1995, hearing had been continued. In support, he presented letters from the City. The District Court, however, found that these letters did not indicate a continuance had been granted, and that Arredondo had "received straightforward and adequate notice [of the September 27, 1995, due process hearing] and had an opportunity to be heard but did not avail himself of that opportunity." In holding that the City satisfied its duty to provide due process to Arredondo, the court noted that, in addition to the opportunity to attend a pre-termination hearing, Arredondo's property interests were fully protected by the four-day, post-termination, *de novo* hearing before the Commission.

¶24 Arredondo also argued that the time delay between his initial suspension and his post-termination hearing (57 months) and his termination and the post-termination hearing

7

(49 months) constituted a violation of due process. The record, however, establishes that this delay was in large part Arredondo's doing: 1) Arredondo's attorney informed the special prosecutor that he did not believe it was appropriate for a termination hearing to be held while the criminal proceeding against Arredondo was pending; 2) Arredondo did not object to the City's motion to continue the post-termination hearing until Arredondo's trial was completed; 3) Arredondo requested and was granted seven continuances of his trial knowing that his post-termination hearing would not be held until the trial was completed, and 4) Arredondo requested a continuance of the Commission's hearing three days before it was to begin. We conclude that Arredondo was provided adequate due process and was not subject to unfair delay.

¶25 We have determined to decide this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. As to the remaining issues raised by Arredondo (see ¶¶ 6-9), the District Court's findings of fact are supported by substantial evidence and the legal issues are clearly controlled by settled Montana law which the District Court correctly interpreted. The District Court did not err in affirming the Commission's decision.

¶26 We affirm the judgment of the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

/S/ JAMES C. NELSON